***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner with minor modifications.
 ***********
Accordingly, the Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction of the parties and the subject matter.
2. All parties have been correctly designated and there is no question as to misjoinder or non-joinder of parties.
3. This case is subject to the North Carolina Workers' Compensation Act.
4. An employment relationship existed between plaintiff and defendant-employer on January 22, 1999.
5. Plaintiff's average weekly wage is $335.38 yielding a compensation rate of $223.56.
6. Defendant-employer has workers' compensation insurance with defendant-carrier, which insurance would provide coverage for this claim.
7. Plaintiff alleges he suffered an injury by accident to his left shoulder on January 22, 1999 during the course and scope of his employment.
8. Plaintiff last worked for defendant-employer on February 10, 1999.
9. Documents stipulated into evidence include the following:
a. Industrial Commission Form 33.
 b. Medical records from Triangle Orthopaedic Associates.
 c. Medical records from Durham Regional Hospital (including Durham Radiology).
 d. Medical records from Person County Memorial Hospital.
e. Employment Security Commission Work Search Records.
 f. Vocational Rehabilitation Evaluation Report — Stephen D. Carpenter.
 g. January 4, 2000 Labor Market Survey of George R. Lentz, Sr.
 h. Defendants' Answers to Plaintiff's First Set of Interrogatories and Request for Production of Documents.
 ***********
The Full Commission adopts with some modificiations the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 51 years old. Plaintiff has a third or fourth grade education. His prior work history involved working on tobacco farms. Plaintiff cannot read and can only write his name.
2. Plaintiff became employed with defendant-employer on October 13, 1994 originally as a garbage collector, and then as a limb collector.
3. On January 22, 1999, plaintiff worked on the "limb truck" picking up limbs and yard debris for the City of Roxboro. As was his habit, prior to going to work on January 22, 1999, plaintiff drove the route for that day to see if there was any unusually large or heavy debris that needed to be picked up. After observing some unusually large items, plaintiff requested the use of a loader, which is a piece of equipment that lifts and loads heavy yard debris. The request was made to Preston Whitfield, the Superintendent of Public Service for the City of Roxboro. In response to plaintiff's request, Mr. Whitfield held up his own hands and said "[t]here's your loader" and refused to provide a loader to plaintiff and his coworkers George Oliver and Jesse Tolar. The crew was usually given a loader to pick up extra heavy debris. Mr. Whitfield's testimony corroborated that it was his decision not to provide a loader on January 22, 1999, and that the crew was not given a loader on that date.
4. On January 22, 1999, plaintiff sustained an injury by accident within the course and scope of his employment with the defendant-employer, when he and a co-worker lifted an unusually heavy tree stump that was left by the road for pick-up. Lifting such a heavy item without a loader constituted an interruption of plaintiff's normal work routine. Plaintiff had to exert more lifting strength than he usually did, and he felt a pain shoot through his left shoulder. Mr. Oliver's testimony corroborated that plaintiff hurt his shoulder, although Mr. Oliver could not remember the date.
5. Mr. Tolar also testified that he was working with plaintiff on January 22, 1999 and remembered Mr. Oliver and plaintiff lifting a stump onto the back of the truck. Mr. Toler stated that Mr. Oliver and plaintiff leaned the trunk up against the back of the truck and rolled it in because it was extra heavy. Mr. Tolar confirmed that it is not a part of their regular work routine to pick up stumps dug out of the ground.
6. After this accident, plaintiff returned to the shop and advised Mr. Whitfield that he hurt his shoulder. Mr. Whitfield did not send plaintiff to a doctor or city nurse and did not fill out any paperwork. Plaintiff then returned to work that afternoon, but reduced the use of his left arm.
7. Plaintiff's left shoulder continued to hurt after he lifted the stump and felt the shooting pain in his left shoulder on January 22, 1999. Plaintiff continued to work without using his left arm and modified how he did his job until he saw his family physician, Dr. Patrick Godwin, on February 10, 1999 for a routine appointment. Even though plaintiff did not seek medical attention until February 10, 1999, orthopedist Dr. Peter Gilmer testified that it would not be unusual for plaintiff to have a complete rotator cuff tear and not see a healthcare provider immediately. Dr. Godwin referred plaintiff to Dr. Gilmer at Triangle Orthopaedics for evaluation of his left shoulder pain. Upon evaluation plaintiff was put on light duty. Plaintiff informed his supervisor, Mr. Whitfield, that he could do light work, but was told that no light duty was available for him.
8. Plaintiff underwent an MRI of his left shoulder on March 15, 1999 which revealed a full thickness rotator cuff tear. Plaintiff underwent left rotator cuff repair by Dr. Gilmer on April 12, 1999 and was kept out of any work. Plaintiff attended physical therapy after his surgery and Dr. Gilmer testified that the number of physical therapy appointments missed by plaintiff, due to his mother's illness and subsequent death, did not have any effect on plaintiff's ultimate outcome. Dr. Gilmer testified that he did not attribute plaintiff's residual weakness and his impairment rating to the fact that plaintiff did not try hard enough or was not consistent enough in the recovery process, but attributed his condition following surgery to the size of the rotator cuff tear in plaintiff's shoulder. Dr. Gilmer testified that plaintiff's hypertension and non-insulin dependent diabetes had little or no effect on plaintiff's healing process. Dr. Gilmer felt that plaintiff had a common outcome for this type of surgery.
9. Dr. Gilmer testified that plaintiff has fifty percent of the full strength of his left arm. As a result of the compensable injury, plaintiff sustained a fifteen percent permanent functional impairment to his left arm. Dr. Gilmer gave plaintiff permanent restrictions of no extensive overhead use of his left arm, and no lifting, pushing, or pulling more than thirty pounds with the left arm.
10. Plaintiff reached maximum medical improvement and was returned by Dr. Gilmer to light duty on September 28, 1999. Defendant-employer has not offered any light duty work to plaintiff. Plaintiff has been out of work since February 11, 1999 as a result of the injury he suffered at work on January 22, 1999, and has been unable to earn any wages in any capacity since February 12, 1999.
11. Plaintiff's left arm continues to hurt and the pain limits his use of the arm. Therefore, plaintiff uses his right arm to compensate and is now having problems with his right arm. Plaintiff cannot do many of the activities he could do before his injury, such as mowing, using a weed eater, vacuuming, mopping, sweeping, and gardening. Dr. Gilmer testified that plaintiff was very honest and credible and that if plaintiff testified that he could not vacuum, mow, or use a weed eater, Dr. Gilmer would believe him.
12. Dr. Gilmer evaluated plaintiff's right arm pain on May 16, 2000 and diagnosed mild rotator cuff tendonitis in plaintiff's right shoulder. Dr. Gilmer testified that the overuse of plaintiff's right arm is a significant factor in the development of the tendonitis in his right shoulder. The right shoulder tendonitis is causally related to the compensable injury by accident.
13. Mr. Stephen Carpenter, a vocational rehabilitation expert, interviewed and administered multiple vocational tests to plaintiff on May 3, 2000. Mr. Carpenter testified that plaintiff had significant communication problems; however, plaintiff told Mr. Carpenter that he hurt his shoulder lifting some sort of large limb, log or trunk or something that was quite heavy. Mr. Carpenter felt that plaintiff put forth his best effort on the testing and, due to plaintiff's limited cognitive ability, it was unlikely that plaintiff would be deceptive. Mr. Carpenter testified that because of plaintiff's age, inability to read or write, lack of education, work history, and limited physical and cognitive abilities, he believes that plaintiff is permanently and totally disabled as a result of the injury plaintiff suffered at work on January 22, 1999. Mr. Carpenter testified that plaintiff's injury and resulting restrictions created significant vocational deficits for plaintiff. He testified that plaintiff is functionally illiterate and would have significant difficulty with job placement, obtaining and retaining jobs, and would have difficulty making work adjustments to new environments. Mr. Carpenter also testified that plaintiff's depression was a problem that needed to be addressed. Mr. Carpenter testified that it is his opinion that plaintiff has no transferable work skills, that he is not employable, and that he has been unable to earn any wages in any other capacity since his injury of January 22, 1999.
14. Mr. George Lentz, a vocational consultant at Crawford and Company, performed a labor market survey for defendants and identified jobs which he felt were suitable employment for plaintiff. However, Mr. Lentz did not interview plaintiff and did not perform any tests on plaintiff. Mr. Carpenter reviewed the labor market survey prepared by Mr. Lentz and testified that none of the jobs listed by Mr. Lentz was in fact suitable employment due to plaintiff's physical limitations, illiteracy, lack of a high school diploma, inability to maintain a work pace, inability to make change, inability to do minimal paperwork, cognitive limitations, problems following directions, poor communication skills, and slow psychomotor speed.
15. Deputy Commissioner Stanback found that plaintiff's testimony and demeanor at the hearing were entirely credible. The Full Commission declines to reverse the credibility determination of the Deputy Commissioner. However, at this time the Commission declines to find that plaintiff is permanently and totally disabled based solely on Mr. Carpenter's opinions. Dr. Gilmer, who was the only physician deposed in this case, gave no opinion that plaintiff is permanently, totally disabled, but rather released plaintiff to return to light-duty work. Because this claim was denied, defendants have not assigned any vocational rehabilitation professional to assist plaintiff in his work search and possible reentry into the workforce. Therefore, plaintiff has not yet reached maximum vocational improvement, which directly affects his ongoing disability. Pending the outcome of vocational rehabilitation efforts, plaintiff is unable to return to his former job or any other job and remains totally disabled.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On January 22, 1999 plaintiff sustained an interruption of his normal work routine resulting in an injury by accident arising out of and in the course of his employment with defendant-employer. Said injury by accident resulted in an injury to his left shoulder and consequently, his right shoulder. N.C. Gen. Stat. § 97-2 (6).
2. As a result of plaintiff's injuries he sustained as a result of his injury by accident, plaintiff is disabled and is entitled to total disability compensation beginning February 11, 1999, at the rate of $223.56 per week and continuing until further Order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
3. As a result of the compensable injury, plaintiff is entitled to the reasonable and necessary medical and nursing expenses, medicines, sick travel, medical, hospital and other treatment or course of rehabilitative services at defendants' expense until further Order of the Industrial Commission. N.C. Gen. Stat. §§ 97-2(19), -25;
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay plaintiff compensation for continuing total disability at the rate of $223.56 per week, beginning February 11, 1999 and continuing until further Order of the Industrial Commission. Amounts which have accrued shall be paid to plaintiff in a lump sum, subject to the attorney fee approved in paragraph 3.
2. Defendants shall pay all reasonable and necessary medical and nursing expenses, medicines, sick travel, medical, hospital and other treatment or course of rehabilitative services until further Order of the Industrial Commission.
3. A reasonable attorney's fee of 25% of the compensation due plaintiff under paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: 25% of the lump sum due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel. Thereafter, every fourth check due plaintiff shall be paid directly to plaintiff's counsel.
4. Defendants shall pay the costs.
This the _____ day of September 2001.
 S/_____________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/_____________________________ BERNADINE S. BALLANCE COMMISSIONER
S/_____________________________ DIANNE C. SELLERS COMMISSIONER
LKM/mhb